## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Minnesota Supply Co., a Minnesota
corporation,

Civil No. 10-4311 (SRN/TNL)

Plaintiff,

**MEMORANDUM OPINION
AND ORDER**

v.

Mitsubishi Caterpillar Forklift America
Inc., a Delaware corporation;
Jungheinrich Lift Truck Corporation, a
Delaware corporation; and Jungheinrich
AG, a German corporation,

Defendants.

---

Gary W. Leydig, and Angela G. Gordon, Riordan, Fulkerson, Hupert & Coleman, 30
North LaSalle St., Suite 2630, Chicago, IL 60602; and Scott E. Korzenowski, Dady &
Gardner, P.A., 5100 IDS Center, 80 South Eighth St., Minneapolis, MN 55402, for
Plaintiff.

Richard A. Lockridge, and Gregg M. Fishbein, Lockridge Grindal Nauen P.L.L.P, 100
Washington Ave. S., Suite 2200, Minneapolis, MN 55402; Richard B. Specter, Corbett,
Steelman & Specter, 18200 Von Karman Ave., Suite 900, Irvine, CA, 92612; and Thomas
J. Collin, Thompson Hine LLP, 127 Public Square, Cleveland, OH 44114, for Defendant
Mitsubishi Caterpillar Forklift America Inc.

Aaron B. Chapin, Reed Smith LLP, 10 South Wacker Drive, Chicago, IL 60606-7507;
and Curtis G. Manchester, and Alison Wickizer Toepp, Reed Smith LLP, Riverfront
Plaza–West Tower, 901 East Byrd St., Suite 1700, Richmond VA 23219-4068, for
Defendants Jungheinrich Lift Truck Corporation, and Jungheinrich AG.

---

SUSAN RICHARD NELSON, United States District Judge

This matter is before the court on Plaintiff Minnesota Supply Co.'s motion for a

preliminary injunction (Doc. No. 16), and the various motions to dismiss (or transfer)

brought by Defendant Mitsubishi Caterpillar Forklift America Inc. (Doc. No. 11),

Defendant Jungheinrich Lift Truck Corporation (Doc. No. 29), and Defendant

Jungheinrich AG (Doc. No. 40).  In support of its motion for preliminary injunctive relief,

Plaintiff also has moved for an expedited scheduling order.  (Doc. No. 19.)  For the

reasons stated below, this Court denies Plaintiff's motion for a preliminary injunction

without prejudice, denies Plaintiff's motion for expedited scheduling as moot, and grants

in part and denies in part each Defendant's motion.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Minnesota Supply Company ("MSC") operates a material handling

equipment dealership that sells lift trucks and also services such vehicles.  MSC is a

Minnesota corporation with its principal place of business in Minnesota (although it also

operates facilities in western Wisconsin).  Defendant Mitsubishi Caterpillar Forklift

America Inc. ("MCFA"), a Delaware corporation with its principal place of business in

Houston, Texas, manufactures and sells the "Caterpillar" brand of lift trucks.  It also sells,

under that same brand, lift trucks manufactured by others, including Defendant

Jungheinrich AG ("Jungheinrich AG"), a German corporation, which manufactures such

vehicles and distributes them in the United States through its subsidiary, Jungheinrich Lift

Truck Corporation ("Jungheinrich USA"), a Delaware corporation with its principal place

of business in Richmond, Virginia.[1]

In 1993, MSC entered into a sales and service agreement with MCFA (the

---

[1]      The Complaint alleges, "[o]n information and belief," that "Jungheinrich USA is a wholly owned subsid[iar]y of Jungheinrich AG."  (Doc. No. 1, ¶ 21.)  In fact, Jungheinrich AG is the direct corporate parent of Jungheinrich Beteiligungsgesellschaft mbH, which in turn is the parent of Jungheinrich USA.  (Doc. No. 46, at 3 n.2.)

2

"MCFA-CAT Dealer Agreement"), which included a "Governing Law" clause providing that the agreement would be construed according to Ohio state law (excluding its conflict of laws principles), and that any action or proceeding "pertaining to" the agreement "shall be" venued in the state or federal courts of Ohio, and further providing that "each party hereby waives any and all rights it may now or hereinafter possess to contest venue or choice of law."  (Doc. No. 42, Ex. 1, ¶ 29.)

Minnesota Supply also entered into a distribution agreement with Jungheinrich USA (the "Distributor Agreement"), effective September 1, 2003, which similarly included a choice-of-forum clause specifying that all disputes arising out of their contractual relationship would be litigated in the courts of Virginia, as well as a choice-of-law provision requiring that the agreement "shall be governed by and construed in accordance with the law of the State of Virginia, without giving effect to principles of conflicts of laws."  (Doc. No. 47, Ex. B, § 12(2), (3).)[2]

Finally, an April 20, 2010 "Software Contract" entered into between MSC and Jungheinrich AG included an arbitration provision requiring that

> any dispute arising out of or connected with [the] Contract, including but not limited to any dispute regarding its formation, validity, binding effect, interpretation, performance, breach, termination or the consequences of its nullity, shall be referred to and finally resolved by arbitration under the Arbitration Rules of the LCIA (London Court of International Arbitration). The place of arbitration shall be London.

---

[2]     The choice-of-forum clause stated that the "exclusive place of jurisdiction for any legal disputes arising, directly or indirectly, from this Agreement shall be the place of business of Jungheinrich [USA]."  (Id. § 12(2).)  Jungheinrich USA's "sole place of business is in Richmond, Virginia."  (Id. ¶ 3.)

(Doc. No. 1, Ex. C, § 15(2).)

In August 2009, after several years during which MSC sold and serviced Defendants' products, MCFA and Jungheinrich AG issued a joint press release announcing that they had entered into a manufacturing and distribution agreement for the North American market, and "that beginning in 2010, MCFA would be the exclusive distributor of Jungheinrich branded warehouse products" in North America.  (Doc. No. 1, ¶ 29.)  The August 12, 2009 letter from Jungheinrich USA to MSC, enclosing the press release, stated that "Jungheinrich AG will close its Richmond facilities in 2010, and it will cease distributing products in North America through Jungheinrich [USA]."  (Id., Ex. D, at 2.)  Accordingly, "Jungheinrich [USA] will not be able to accept orders for trucks or spare parts after December 31, 2009."  (Id.)  By letter dated December 23, 2009, Jungheinrich USA informed MSC "that, beginning in 2010, it would no longer distribute Jungheinrich branded products in North America and provide related distributor parts and support," with the closure of its Richmond facility "currently anticipated to start in a phased manner in early 2010."  (Id., Ex. E.)  The letter also reiterated that MCFA would "be the new exclusive distributor for Jungheinrich branded products within the United States, and as such, your company as being part [sic] of MCFA's existing dealership network, will continue to have access to such product lines through MCFA, as of January 1, 2010."  (Id.)  Jungheinrich USA enclosed a proposed "Settlement and Mutual Release Agreement."  (Id.)

After January 1, 2010, MSC placed its orders through MCFA, but otherwise

4

continued to operate as a Jungheinrich dealer.  (Id. ¶¶ 34-40.)  But starting in May and June of 2010, MSC's orders were refused and its license to Jungheinrich AG's servicing software was cancelled.  (Id. ¶¶ 41-43.)

In October 2010, MSC then filed, in federal district court in Minnesota, a nine-count Complaint against MCFA, Jungheinrich USA, and Jungheinrich AG, alleging various breaches of the relevant agreements, violations of state statutes governing such agreements, and tortious interference with one of those agreements.  (Id.)  MSC combined its claims against MCFA, Jungheinrich USA and Jungheinrich AG into a single Complaint that asserts the following:

(1) a breach of contract claim against Jungheinrich USA regarding the Distributor Agreement (Count I);

(2) a claim for Jungheinrich USA's violation of Minnesota and Wisconsin statutes governing the Distributor Agreement (Count II);

(3) a claim, plead in the alternative, for wrongful assignment by Jungheinrich USA, and subsequent breach by MCFA, of the Distributor Agreement (Count III);

(4) a breach of contract claim, also plead in the alternative, against MCFA, alleging the formation and breach of an implied-in-fact agreement between MSC and MCFA (the "Jungheinrich Brand Dealership Contract") (Count IV);

(5) a claim, again plead in the alternative, for MCFA's violation of Minnesota and Wisconsin statutes governing the Jungheinrich Brand Dealership Contract (Count V);

(6) a claim for breach by MCFA of the MCFA-CAT Dealer Agreement (Count

5

VI);

(7) a claim for MCFA's violations of Minnesota and Wisconsin dealership statutes with respect to the MCFA-CAT Dealer Agreement (Count VII);

(8) a breach of contract claim against Jungheinrich AG regarding the Software Contract (Count VIII); and

(9) a claim against MCFA and Jungheinrich AG for tortious interference with the MSC-Jungheinrich USA Distributor Agreement (Count IX).  (Doc. No. 1.)

On January 11, 2011, MSC then moved for a preliminary injunction (Doc. No. 16), as well as for an expedited hearing schedule (Doc. No. 19).

In the interim, on December 20, 2010, MCFA moved to dismiss two of the claims. (Doc. No. 11.)[3]  Similarly, on January 14, 2011 and February 1, 2011, Jungheinrich USA, and Jungheinrich AG, respectively, moved to dismiss.  (Doc. Nos. 29 & 40.)  In particular, MCFA seeks dismissal of Count VI for improper venue pursuant to Rule 12(b)(3) and dismissal of Count IX for failure to state a claim on which relief may be granted pursuant to Rule 12(b)(6).  (Doc. No. 11.)  Jungheinrich USA seeks dismissal of the claims directed against it for improper venue.  (Doc. No. 45, at 1-2.)  In the alternative, it seeks transfer to the Eastern District of Virginia "pursuant to 28 U.S.C. §§ 1404(a) and 1406."  (Id. at 2.)  Jungheinrich USA also seeks, pursuant to Rule 12(b)(6), dismissal of Count II for failure to state a claim on which relief may be granted, claiming

---

[3]    MCFA also filed, on November 29, 2010, a declaratory judgment action in the Northern District of Ohio.  (Doc. No. 41, at 9.)  MSC moved to dismiss or stay the action.  (Id.)  The Ohio federal court stayed the action pending the outcome of the motions presently before this Court.  (Id.)

6

that the applicable "time limitation for bringing [that] claim . . . expired prior to the filing of the Complaint."  (Id.)

Finally, based on the arbitration clause in the Software Contract, Jungheinrich AG seeks dismissal of Count VIII for lack of subject matter jurisdiction and for improper venue, or in the alternative, to stay litigation of that claim and to compel arbitration. (Doc. No. 40, at 1.)  In addition, Jungheinrich AG seeks dismissal of Count IX for improper venue and for failure to state a claim on which relief may be granted.  (Id. at 2.) And in light of its subsidiary's motion to dismiss, Jungheinrich AG also seeks dismissal of Count IX "to the extent the Court dismisses the count against Jungheinrich [USA] for lack of proper venue."  (Id.)

Defendants thus generally argue that (1) the action (or relevant claims) must be dismissed for lack of venue under Rule 12(b)(3) because choice-of-forum provisions mandate that the action (or individual claims) be brought elsewhere; (2) in the alternative, the action (or claims) should be transferred elsewhere under 28 U.S.C. § 1404(a); and (3) Count VIII against Jungheinrich AG should be dismissed pursuant to an arbitration provision (or that arbitration of that claim be compelled).

## II.    DISCUSSION

In this diversity action, the Court is called upon to decide primarily whether Minnesota or some other forum (or forums) is (or are) the appropriate venue (or venues). The issue is complicated by the fact that each of the three Defendants relies on a different forum-selection clause, specifying resolution of the claims against them in three separate

forums.  Moreover, one of the three forum-selection clauses does not just require

resolution of the relevant dispute by another court, as the agreement between MSC and

Jungheinrich AG includes an arbitration clause rather than a clause specifying a particular

judicial forum.

MSC thus argues that "[n]ow each defendant . . . is objecting to venue and

attempting to transfer portions of Minnesota Supply's claims; thereby seeking to split this

case among three different courts across the country.  If the various venue motions are

granted, the same story will have to be tried and retried in multiple courts."  (Doc. No. 57,

at 3; Doc. No. 60, at 3.)  Moreover, MSC contends that the various motions, even if each

were to be granted, would not remove from this Court all of the claims it has asserted.  In

particular, it contends that none of the motions attempts to dispose of Counts IV, V and

VII, or the portion of Count III directed at MCFA (as opposed to Jungheinrich USA).

### A.    Venue Transfer Standard

At the outset, the Court notes something of a procedural conundrum presented by

the various Defendants' particular arguments for dismissal and/or transfer for lack of

proper venue.  MCFA seeks only dismissal pursuant to Rule 12(b)(3), without any

alternative request for transfer or explicit reference to 28 U.S.C. §§ 1404, 1406.

Jungheinrich USA likewise seeks dismissal under Rule 12(b)(3) for lack of proper venue,

but also invokes both Section 1404(a) and Section 1406(a) with respect to its alternative

request for relief in the form of transfer.  And Jungheinrich AG contends that, in light of

an arbitration clause, Count VIII should be dismissed pursuant to Rule 12(b)(1) for lack

8

of subject matter jurisdiction and/or pursuant to Rule 12(b)(3) for improper venue, without any reliance on Sections 1404 or 1406.[4]  (In the alternative, it seeks at least a stay of this litigation and an order compelling arbitration.)

Each Defendant's motion is based, at least in part, on the existence of a choice-of-forum clause (or arbitration provision) in their respective agreements with MSC.[5]  But as several courts have recognized, neither the federal rules nor any provision of Title 28 expressly addresses the proper procedural vehicle for seeking enforcement of contractual choice-of-forum provisions.[6]  Moreover, there is a dispute as to whether the existence of such a provision specifying venue elsewhere would render Minnesota a "wrong" venue here for purposes of 28 U.S.C. § 1406(a).  Apart from the forum-selection provisions, it

---

[4]        Granted, Section 1404 presumably could not apply insofar as a federal court, even assuming venue in its forum would otherwise be proper, could not "transfer" an action to a private arbitration tribunal, much less a foreign tribunal.  28 U.S.C. § 1404(a) (providing only for transfer "to any other district or division where it might have been brought").

[5]        There is no dispute that each of the forum-selection provisions at issue–providing, respectively, that "the exclusive" venue "*shall be*" as specified (Doc. No. 47, Ex. B (emphasis added)), that "the venue of any action or proceedings . . . *shall be*" as specified (Doc. No. 42, Ex. 1 (emphasis added)), and that "the parties irrevocably agree that any dispute . . . *shall be* referred to and finally resolved by arbitration" (Doc. No. 1, Ex. C, § 15(2) (emphasis added))–is "mandatory" rather than "permissive."  See generally Multifeeder Tech., Inc. v. British Confectionery Co. Ltd., No. 09-1090 (JRT/ALB), 2009 WL 5033958 (D. Minn. Dec. 15, 2009) (addressing distinction).

[6]        The Federal Arbitration Act ("FAA") provides procedural mechanisms for compelling arbitration and staying any related litigation.  9 U.S.C. § 3 (providing authority for court, on "application of one of the parties," to stay judicial action pending arbitration of "any issue referable to arbitration under an agreement in writing for such arbitration"), § 4 (providing authority for party to file a petition to compel arbitration of any dispute subject to a written arbitration agreement).

9

would appear that venue here would be proper under 28 U.S.C. § 1391(a)(2) in that a substantial part of the events giving rise to the claims occurred here.  (See Doc. No. 1 (Complaint), ¶ 6 (alleging as much).)[7]

The motions brought by the three Defendants, while all seeking dismissal (or transfer), are premised on different theories and, therefore, are based on different parts of Rule 12(b):  Rule 12(b)(1), Rule 12(b)(3) and Rule 12(b)(6).  The standards applicable to these various motions differ.  E.g., Sucampo Pharmaceuticals, Inc. v. Astellas Pharma, Inc., 471 F.3d 544, 548-50 (4th Cir. 2006).  As will be seen, however, Rule 12(b)(3) and Section 1404(a) govern here.

**B.     Venue Is Not Proper In Minnesota**

To evade the forum restrictions of the various agreements in an effort to bring a single action here against all three Defendants, MSC–asserting that "the parties–and their stories–are inexorably interrelated" (Doc. No. 57, at 2; Doc. No. 60, at 2)–relies in large part on Minnesota's and Wisconsin's equipment dealership statutes to contend that the various choice-of-forum provisions are invalid.  (Doc. No. 57, at 2.)  MSC argues that the Minnesota and Wisconsin dealership statutes "govern the dealer agreement and the

---

[7]      There is a split in the courts as to whether a valid and enforceable choice-of-venue clause itself renders any other venue "improper" so as to preclude application of Section 1404–which requires as a prerequisite that the forum where the action is filed be proper–and limit the analysis to Section 1406–which assumes that the forum where filed is "wrong."  14D Wright & Miller, Federal Practice and Procedure § 3803.1, at 111-14 (3d ed. 2007).

relationship between Jungheinrich USA and Minnesota Supply in this case."  (Id. at 3.)[8]

But approaching the overall venue issue in this manner is contrary to the Supreme Court's decision in Stewart Org. Inc. v. Ricoh Corp., 487 U.S. 22 (1988).  But before the Court discusses Stewart, it must first address a question that was not at issue in Stewart, that is, the arbitration agreement between MSC and Jungheinrich AG.

### 1. MSC's Claims Against Jungheinrich AG Must Be Arbitrated In London

#### (a) The Breach of Contract Claim

Jungheinrich AG moves to dismiss Count VIII, which alleges breach of the software licensing agreement, on the ground that MSC agreed to arbitrate any disputes arising out of that agreement.  As Jungheinrich AG contends, "MSC makes no allegation that the Software Contract is invalid in any way.  To the contrary, MSC seeks to enforce the terms of the Software Contract."  (Doc. No. 46, at 5.)[9]

---

[8]     The various claims asserted here, particularly the breach of contract counts, are of course state-law claims.  And putting aside the various choice-of-law provisions, there could be a choice-of-law issue here.  But MSC offers no authority in support of its assertion that the laws of more than one state may simultaneously apply in this action.  And while the Minnesota courts might often look to decisions from the Wisconsin courts to interpret Minnesota's equipment dealer statutes, any such interpretive aid does not mean that Wisconsin law governs wholesale here, particularly where it is not consistent with Minnesota law.

[9]     At oral argument, counsel for MSC clarified that Count VIII was no longer at issue with respect to MSC's request for preliminary injunctive relief because the parties had reached, just before the Complaint was filed, an "interim software agreement" under which Jungheinrich AG resumed MSC's ability to access the servicing software.  But counsel also clarified that MSC is still seeking damages for the period during which it was deprived of such access, contending that Jungheinrich AG's denial of access constitutes a breach of the Software Agreement.  Accordingly, Count VIII remains an

continue...

11

In fact, MSC expressly asserts that it "does not dispute the validity and enforceability of arbitration clauses generally."  (Doc. No. 60, at 33.)  MSC's only defense is that AG "should not be able to hide behind [the arbitration] clause" because it "has stated that it is, essentially, one and the same entity as Jungheinrich USA."  (Id. at 5.)  MSC thus claims that "Jungheinrich AG and Jungheinrich USA *both* become liable under the [agreement Jungheinrich USA entered into with MSC] and equally subject to the proscriptions of the WFDL and HUEMDA."  (Id. at 32 (emphasis in original).)

MSC contends that here "the parties–and their stories–are inexorably interrelated." (Doc. No. 60, at 2.)  There is no question that Jungheinrich AG and Jungheinrich USA are related corporate entities.  And it is clear that each entity had a contractual relationship with MSC regarding the same general subject matter.  But this is no basis to deny arbitration.  A corporate parent is a separate legal entity from any subsidiaries, even if they are wholly-owned by the parent.  United States v. Bestfoods, 524 U.S. 51, 61 (1998). Thus, the forum-selection clause in a contract between the subsidiary and another generally does not also bind the parent in any dispute with the other party.

This is particularly true where the parent has entered into its own contractual relationship with the other party and the contract includes an arbitration clause.  Congress enacted the FAA to ensure that arbitration agreements were enforced by the courts, the same as any other contract.  E.g., Vaden v. Discover Bank, 556 U.S. 49, __, 129 S. Ct. 1262, 1271 (2009) ("Congress enacted the FAA '[t]o overcome judicial resistance to

---

[9]...continue
open claim.

arbitration.").  The FAA thus reflects a policy of favoring agreements to arbitrate and strictly enforcing them according to their terms.  Id. ("Congress enacted the FAA . . . to declare 'a national policy favoring arbitration' of claims that parties contract to settle in that manner.")  Accordingly, MSC's claim against Jungheinrich AG for breach of the software contract must be arbitrated in London regardless of where MSC's other claims are resolved.

The result is that MSC's claim for judicial economy falters at the outset. Arguments for the resolution of an entire dispute in a single forum do not trump the FAA's mandate to enforce arbitration agreements.  The Supreme Court has expressly held that the FAA "requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums."  Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 217 (1985).  In Byrd, the Court explained "that the inefficiency and difficulty of conducting simultaneous arbitration and federal court litigation was not a good enough reason to defer the arbitration."  Hall Street Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 588 (2008).

MSC also suggests that arbitration is precluded based on the state equipment dealer statutes.  (Doc. No. 60, at 32.)  But the Software Contract's arbitration clause effectively preempts–pursuant to the FAA–any state law to the contrary.[10]  "When parties

---

[10]     AG contends that a motion to dismiss based on a binding arbitration agreement is treated as a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1).  (Doc. No. 46, at 4.)  But this ignores the fact that the FAA does not itself
continue...

agree to arbitrate all questions arising under a contact, the FAA supersedes state laws

lodging primary jurisdiction in another forum, whether judicial or administrative."

Preston v. Ferrer, 552 U.S. 346, 359 (2008). Having agreed to arbitrate its contractual

dispute with Jungheinrich AG in London, nothing in the Minnesota (or Wisconsin)

statutes may override that agreement. Thus, this Court must dismiss Count VIII, which

was brought solely against Jungheinrich AG, in favor of arbitration.

### (b) The Tortious Interference Claim

With respect to the claim for tortious interference with the Distributor Agreement,

a claim MSC directed against Jungheinrich AG as well as against MCFA, Jungheinrich

---

[10]...continue

supply any form of federal jurisdiction. Vaden v. Discover Bank, 556 U.S. 49, __, 129 S. Ct. 1262, 1271 (2009) (explaining that the FAA "is 'something of an anomaly' in the realm of federal legislation: It 'bestow[s] no federal jurisdiction but rather requir[es] [for access to a federal forum] an independent jurisdictional basis over the parties' dispute."). The nature of the underlying dispute must independently satisfy one of the bases for federal subject-matter jurisdiction. Id. To dismiss a federal action for lack of subject matter jurisdiction *because* the dispute is subject to a binding arbitration agreement mistakenly assumes that an arbitrable dispute, by definition, falls outside the realm of federal jurisdiction. Moreover, the fact that the parties have contractually agreed to resolve any particular dispute by arbitration says nothing about whether that dispute would satisfy federal question, diversity or any other basis of subject-matter jurisdiction. Accordingly, such a motion could be brought under Rule 12(b)(3) because the argument that a claim should be arbitrated is, in effect, an argument that the claim is improperly venued in federal court. Rodriguez De Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 482-83 (1989) (noting that arbitration agreements "are 'in effect, a specialized kind of forum-selection clause'"). Alternatively, a proper vehicle for addressing the argument that a dispute is arbitrable is a Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief may be granted. A claim may be dismissed "under Rule 12(b)(6) when its allegations indicate the existence of an affirmative defense that will bar the award of any remedy." 5B Wright & Miller, Federal Practice and Procedure § 1357, at 708 (3d ed. 2004). A valid arbitration agreement bars this Court from granting judicial relief on any issue within the scope of the applicable arbitration clause (other than confirmation of any subsequent arbitration award).

AG also seeks dismissal on various grounds, including the forum-selection clause in the

contract between MSC and *Jungheinrich USA*–the Distributor Agreement.  (Doc. No. 46,

at 14.)  As noted above, Jungheinrich AG is the German corporate parent of Jungheinrich

USA.[11]  Jungheinrich AG contends that the tort claim of Count IX, "although against

[Jungheinrich AG], is a legal dispute arising from the Distribution Agreement.

Accordingly, the forum selection provision is applicable to Count IX as a related claim."

(Id. at 13-14.)  Jungheinrich AG thus argues that under the doctrine of equitable estoppel,

MSC, as a signatory to that agreement, is bound to it not only with respect to

Jungheinrich USA, but also with respect to Jungheinrich AG and MSC's tortious

interference claim against Jungheinrich AG.  (Id. at 14.)[12]

---

[11]     In fact, Jungheinrich AG is the *indirect* corporate parent of Jungheinrich
USA.  See supra note 1.  This slight additional degree of separation does not appear,
however, to change the analysis.

[12]     The Court notes that Jungheinrich AG does not argue that Count IX must be
arbitrated along with Count VIII, because the broad scope of the arbitration clause in the
contract between MSC and Jungheinrich AG extends to also encompass the portion of
Count IX directed at Jungheinrich AG.  It is beyond dispute that MSC agreed to arbitrate
its software license disputes with Jungheinrich AG.  Accordingly, the federal policy in
favor of arbitration imposes a broad interpretation on the scope of that agreement.
Granite Rock Co. v. Int'l Brotherhood of Teamsters, ___ U.S. ___, 130 S. Ct. 2847, 2857
(2010) ("The first principle [of arbitrability] is that where, as here, parties concede that
they have agreed to arbitrate *some* matters pursuant to an arbitration clause, the 'law's
permissive policies in respect to arbitration' counsel that ''any doubts concerning the
scope of arbitral issues should be resolved in favor of arbitration.'''").  And the purported
scope of that clause is arguably broad:

> The parties irrevocably agree that any dispute arising out of *or connected
> with* this Contract, including but not limited to any dispute regarding its
> formation, validity, binding effect, interpretation, performance, breach,
> termination or the consequences of its nullity, shall be referred to and

continue...

15

Jungheinrich AG relies on Tattoo Art, Inc. v. TAT Int'l, LLC in support of its argument that MSC is bound by the forum-selection clause in the contract into which it entered with Jungheinrich USA.  In Tattoo Art, the court concluded that the plaintiff was estopped from contending that the individual defendant who "operated and controlled" the entity defendant could not enforce the mediation clause in the agreement between the plaintiff and the entity defendant, even though the individual defendant was not a signatory to that agreement.  711 F. Supp. 2d 645, 654 (E.D. Va. 2010).

In response, MSC contends that Jungheinrich AG's argument is "unprecedented" because here MSC "is not enforcing the terms of an underlying agreement against Jungheinrich AG, and then inequitably refusing to allow Jungheinrich AG the benefit [of] that agreement's terms."  (Doc. No. 60, at 17.)  But the court in Tattoo Art simply applied well-established principles of law.  For example, where the non-signatory is an officer, director and shareholder of a corporate signatory, the non-signatory is, "without question, 'closely related' to the disputes arising out of the agreements and properly bound by the forum-selection provisions."  Marano Enterprises of Kansas v. Z-Teca Restaurants, L.P., 254 F.3d 753, 757-78 (8th Cir. 2001).  Likewise, where a non-party to a forum-selection cause is "'so closely related to the dispute that it becomes foreseeable that it will be

_____

[12]...continue
finally resolved by arbitration.

(Doc. No. 1, Ex. C, § 15(2) (emphasis added).)  But the claim that Jungheinrich AG tortiously interfered with the Distributor Agreement does not fall within the terms of the arbitration clause, even if broadly construed, because the provision is confined by its terms to disputes about *that* agreement, not any other agreement, particularly one to which AG is not a party.  EEOC v. Waffle House, Inc., 534 US. 279, 294 (2002).

bound,'" the non-party will be bound by the choice of forum.  <u>BTC-USA Corp. v. Novacare</u>, 2008 WL 2465814 (D. Minn. June 16, 2008) (internal citation omitted).

This Court agrees that the portion of Count IX directed against Jungheinrich AG is subject to the forum-selection clause of the Distributor Agreement MSC entered into with Jungheinrich USA.  First, the breadth of that clause extends to "any legal disputes arising, directly *or indirectly*, from this Agreement."  (Doc. No. 47, Ex. B, § 12(2) (emphasis added).)  Count IX essentially alleges that Jungheinrich AG procured the breach of that agreement by Jungheinrich USA, that Jungheinrich AG (along with MCFA) "caused Jungheinrich USA to breach the Jungheinrich Distributor Agreement."  (Doc. No. 1, ¶¶ 189, 190.)

And, of course, Jungheinrich AG is the corporate parent of Jungheinrich USA.  Thus, although those two entities are separate corporations, it is not unfair to MSC to have the Virginia court that will be hearing its claim that Jungheinrich USA breached the contract also hear the closely-related claim that Jungheinrich USA's owner is also liable for procuring that breach.  In fact, this is an easier issue for application of the estoppel doctrine than that addressed in <u>Tattoo Art</u> because here MSC did in fact contractually agree on a forum for resolution of its disputes with Jungheinrich AG, albeit in a different forum.  Thus, MSC may not complain that it did not agree on a forum, only which particular forum.

Granted, this will result in the claims against Jungheinrich AG being heard in separate forums, but there is, of course, no prejudice to Jungheinrich AG as it seeks this

bifurcated result.  In addition, the claim destined for arbitration, breach of the separate

software agreement, is not necessarily contingent on the tort claim.  Conversely, if the tort

claim against Jungheinrich AG is not heard by the same court that will decide the claim

against Jungheinrich USA, there exists a much more likely possibility of inconsistent

results, for example, a decision that Jungheinrich USA did not breach the agreement but

that Jungheinrich AG procured such a breach by its subsidiary.

In any event, one of the claims against Jungheinrich AG must be arbitrated in

London according to the relevant parties' agreement.  And the result–that some piecemeal

resolution of the overall dispute is unavoidable–is no basis on which to deny arbitration.

Thus, the remaining question becomes whether, in light of the fact that one of the claims

against Jungheinrich AG must be arbitrated in London, the remaining claims against the

other Defendants should remain here as opposed to the particular forums–Ohio and

Virginia–designated in the respective contracts.

### 2.	MSC's Claims Against Jungheinrich USA and MCFA

With respect to the motions to dismiss or transfer for improper venue, the parties'

arguments mistakenly attempt, in large part, to relitigate matters already clearly settled by

the Supreme Court.  There is no doubt that this Court, exercising its diversity jurisdiction,

applies state substantive law.  But even in such circumstances, a federal court *must* apply

a federal statute, including those governing venue and transfer, if "the statute is

'sufficiently broad to control the issue before the Court,'" and "the statute represents a

valid exercise of Congress' authority under the Constitution."  Stewart Org., Inc. v. Ricoh

Corp., 487 U.S. 22, 26-27 (1988) (noting that the issue of whether to apply a federal

statute such as Section 1404 "involves a considerably less intricate analysis than that

which governs the 'relatively unguided *Erie* choice'").[13]

> If Congress intended to reach the issue before the District Court, and if it
> enacted its intention into law in a manner that abides with the Constitution,
> that is the end of the matter; "[f]ederal courts are bound to apply rules
> enacted by Congress with respect to matters . . . over which it has
> legislative power."

Id. at 27.

The Court further clarified that Section 1404(a) "itself controls [a defendant's]

request to give effect to the parties' contractual choice of venue and transfer" the case to

the agreed-upon forum.  Id. at 29.[14]  Moreover, the Court also implied that the existence

---

[13]     Only if Section 1404(a) (or any other federal rule or statute) would not
govern the issue would the Court face a true *Erie* question.  Id. at 27 n.9.

[14]     There is some dispute in the lower federal courts as to whether enforcement
of a forum-selection clause is sought pursuant to Rule 12(b)(1), 12(b)(3), or 12(b)(6).
Rainforest Café, Inc. v. Eklecco, L.L.C., 340 F.3d 544, 545 n.5 (8th Cir. 2003) (noting
"controversy as to whether Rule 12(b)(3) or 12(b)(6) is the proper procedural vehicle").
Most courts view Rule 12(b)(3) as the proper procedural vehicle.  5B Wright & Miller,
Federal Practice and Procedure § 1352, at 318-19 (3d ed. 2004).  Between the three Rule
12 options, this Court agrees with the majority for the reasons discussed by the Fourth
Circuit in Sucampo Pharmaceuticals, Inc. v. Astellas Pharma, Inc., 471 F.3d 544, 548-50
(4th Cir. 2006).  Accord Webb Candy, Inc. v. Walmart Stores, Inc., 2010 WL 2301461, *4
(D. Minn. June 7, 2010) (agreeing with decisions of several courts, including Sucampo).
"Technically speaking, [however], motions to transfer are made pursuant to a motion
under the statute rather than under Rule 12(b)(3), although little . . . turns on this
distinction."  5B Wright & Miller, Federal Practice and Procedure § 1352, at 326-27 (3d
ed. 2004).  Accord id., at 330 ("As is true of the Section 1404(a) motion, a motion for
relief under Section 1406(b) or Section 1407 is not a Rule 12(b)(3) motion.").  "A motion
to transfer . . . pursuant to 28 U.S.C. § 1404(a) is not a motion under Rule 12(b)(3)."  Red
Wing Shoe Co., Inc. v. B-Jays USA, Inc., No. 02-257 (DWF/AJB), 2002 WL 1398538,
*2 (D. Minn. June 26, 2002).  The Court is unaware of any meaningful difference

continue...

of a forum-selection clause does *not* render an otherwise valid venue under Section 1391 "wrong" for purposes of Section 1406(a).  Id. at 28 n.8.[15]

Noting that "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness,'" the Supreme Court in Stewart explained that such a motion requires a court "to weigh in the balance a number of case-specific factors. *The presence of a forum-selection clause . . . will be a significant factor that figures centrally in the district court's calculus.*"  Id. at 29 (emphasis added).[16]

---

[14]...continue
between the two vehicles in the present circumstances.

[15]    Yet, again, there is a disagreement in the lower federal courts on this point. "The better view . . . is that a forum selection clause does not render venue improper in an otherwise proper forum."  14D Wright & Miller, Federal Practice and Procedure § 3803.1, at 112 (3d ed. 2007) (but noting that "[a] larger number of the" federal circuits have held to the contrary).

[16]    Many lower courts have relied on the Supreme Court's decisions in The Bremen v. Zapata Off-Shore Co. and Carnival Cruise Lines, Inc. v. Shute to conclude that a forum-selection clause should be given controlling weight in all but the most exceptional cases.  E.g., Servewell Plumbing, LLC v. Fed. Ins. Co., 439 F.3d 786, 789 (8th Cir. 2006) ("Under *Bremen*, '[f]orum selection clauses are prima facie valid and are enforced unless they are unjust or unreasonable or invalid.'").  But in both of those cases, the Supreme Court was operating under its admiralty jurisdiction.  Carnival Cruise Lines, Inc., 499 U.S. 585, 590 (1991) ("We begin by noting the boundaries of our inquiry.  First, this is a case in admiralty."); The Bremen, 407 U.S. 1, 10 (1972) ("We believe [enforcing forum-selection clauses unless shown to be unreasonable] is the correct doctrine to be followed by federal district courts sitting in admiralty.").  And as the Court noted in Stewart, the "federal common law developed under admiralty jurisdiction [is] not freely transferable to [a] diversity setting."  487 U.S. at 28.  Accord 14D Wright and Miller, Federal Practice and Procedure § 3803.1, at 104-05 (3d ed. 2007) (noting it is a "mistake" to "apply the principles announced in M/S Bremen and Carnival Cruise to diversity and federal question cases when the terms of the forum clause would allow transfer to another
continue...

20

The Court also clarified that if the state law of the forum where the action is filed reflects a state public policy against forum-selection clauses, a district court entertaining a transfer motion must "integrate the factor of the forum-selection clause into its weighing of considerations as prescribed by Congress."  Id. at 30 (explaining that because "the instructions of Congress are supreme," federal court may not simply apply a state's "categorical policy disfavoring forum-selection clauses").  In short, the flexible, multi-factor discretionary analysis required by Section 1404(a) "governs the parties' dispute notwithstanding any contrary [state] policy."  Id. at 30 n.9.[17]

_____

[16]...continue
federal district.").  See Terra Int'l v. Mississippi Chemical Corp., 119 F.3d 688, 696 n.10 (8th Cir. 1997) (recognizing that admiralty cases such as The Bremen might not apply in diversity cases).

[17]    The Supreme Court thus squarely held "that federal law, specifically 28 U.S.C. § 1404(a), governs the District Court's decision whether to give effect to the parties' forum-selection clause and transfer" a case to the agreed-upon forum.  Id. at 32.  Some lower courts have recognized that the issue is settled by Stewart Org., Inc. v. Ricoh Corp.  E.g., IFC Credit Corp. v. Aliano Bros. General Contractors, Inc., 437 F.3d 606, 608 (7th Cir. 2004) (Posner, J.) (noting that validity of forum-selection clause, in context of transfer motion under Section 1404(a), "would plainly be governed by federal law").  Yet many lower courts have not recognized the impact of Stewart.  14D Wright and Miller, Federal Practice and Procedure § 3803.1, at 106 (3d ed. 2007) ("Another common error is the frequent suggestion that there is still a dispute as to whether the enforcement of forum selection clauses in diversity cases present a question of federal or state law under the Erie doctrine.").  Thus, some lower courts have concluded that state law applies.  Id. at 107 & n.66.  And a few courts, including the Eighth Circuit, have not yet squarely decided the issue.  Servewell Plumbing, LLC v. Fed. Ins. Co., 439 F.3d 786, 789 (8th Cir. 2006) (noting "disagreement among the circuits," and that Eighth Circuit "ha[s] yet to adopt a definitive position on the issue," but concluding it need not do so there).  Cf. Fru-Con Constr. Corp. v. Controlled Air, Inc., 574 F.3d 527, 538 (8th Cir. 2009) ("[E]nforcement, or not, of the contractual forum selection clause was a federal court procedural matter governed by federal law.") (Beam, J., with Bye, J., concurring in the result); Rainforest Café, Inc. v. Eklecco, L.L.C., 340 F.3d 544, 546 (8th Cir. 2003) ("We
continue...

21

In sum, under federal law, a "forum-selection clause, which represents the parties' agreement as to the most proper forum, should receive neither dispositive consideration (as [Defendants] might have it) nor no consideration (as [Plaintiff contends Minnesota and Wisconsin] law might have it), but rather the consideration for which Congress provided in § 1404(a)." Id. at 31.  Thus, despite the positions taken by the parties here, it is clear that in diversity actions in federal court, the following principles are established: (1) federal law, namely Section 1404(a), not state law, governs motions to dismiss or transfer where a forum-selection clause exists and permits venue in another federal district; (2) a forum-selection clause specifying venue in a forum other than where the action is filed does not render that venue "wrong" so as to trigger Section 1406; (3) a federal court does not simply defer to any state policy against the enforcement of forum-selection clauses;[18] and (4) neither does the court defer to such a clause, without regard to

_____

[17]...continue
are inclined to agree [that federal law controls].").

[18]    MSC relies on several unpublished federal decisions, Brown Dog, Inc. v. Quizno's Franchise Co., 2004 WL 1114427 (W.D. Wis. May 13, 2004), and Brio Corp. v. Meccano S.N., 2007 WL 2572307 (E.D. Wis. Sep. 5, 2007), in support of its position that the forum-selection clauses at issue here are categorically invalid and unenforceable. (Doc. No. 54, at 9-12; Doc. No. 57, at 9-12; Doc. No. 60 at 21-23.)  But in Wins Equipment, LLC v. Rayco Mfg. Inc., the Wisconsin federal court clarified that a "forum selection clause is neither dispositive nor void."  668 F. Supp. 2d 1148, 1152 (W.D. Wis. 2009).  Thus, a state law, such as the Wisconsin Fair Dealership Law, "that categorically disfavors forum selection clauses must yield to § 1404(a)'s multifactor balancing test." Id.  The court expressly repudiated any contrary implication derived from Brown Dog. Id. at 1152 n.1.

other relevant factors, as it might when exercising its admiralty jurisdiction.[19]

Accordingly, MSC's argument that Minnesota's and/or Wisconsin's equipment dealership statutes governs here so as to invalidate the forum-selection clauses at issue is simply untenable.  Likewise, however, Defendants' arguments that those clauses *must* be enforced here without regard to any other factors is also misplaced.

### (a)  Application of the Section 1404(a) Factors

Under Section 1404(a), a court considers "the convenience of [the] parties and witnesses," and the "interest of justice."  28 U.S.C. § 1404(a).  As the Court ruled in Stewart, the presence of a forum-selection clause "will be a significant factor that figures centrally in the district court's calculus."  487 U.S. at 29.  But other factors may also inform the Section 1404(a) analysis, including the fact that under the state law of the forum such clauses are viewed unfavorably.  Id. at 30 (noting that court must then "integrate" that policy factor into the analysis).

Here, one provision of the Minnesota statute governing heavy and utility

---

[19]    In admiralty, forum-selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances."  M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972).  It is not entirely clear how that strict enforcement standard differs from that applied in diversity cases, that is, that a forum-selection clause is "a significant factor that figures centrally in the district court's calculus."  Stewart, 487 U.S. at 29.  Applying the Supreme Court's decision in The Bremen, the Eighth Circuit has stated that as long as the clause results from "an arms-length negotiation, the party challenging the clause bears an especially 'heavy burden of proof' to avoid its bargain.  Only 'some compelling and countervailing reason' will excuse enforcement of a bargained-for forum selection clause."  Servewell Plumbing, LLC, 439 F.3d at 789.  Moreover, "mere 'inconvenience to a party is an insufficient basis to defeat an otherwise enforceable forum selection clause.'"  Id. at 790.

equipment manufacturers and dealers, Minn. Stat. 325E.068-.0684, provides that "[a] term of a dealership agreement . . . , including a choice of law provision, that is inconsistent with the terms of sections 325E.068 to 325E.0684 . . . is void and unenforceable and does not waive any rights that are provided to a person by sections 325E.068 to 325E.0684."  Minn. Stat. § 325E.0683.  The Minnesota statute provides that upon a violation of it by an equipment manufacturer, "an equipment dealer may bring an action against the manufacturer in a court of competent jurisdiction for damages sustained."  Minn. Stat. § 325E.0683.  But a "court of competent jurisdiction" is simply any court that would have subject matter and personal jurisdiction.  The statute simply does not restrict such actions solely to the courts of Minnesota (state or federal).[20] Nevertheless, the statute presumably reflects the policy that the plaintiff should be able to bring an action in any competent court of its choosing, notwithstanding a contractual choice-of-forum provision.[21]  But the Eighth Circuit has ruled that "invalidating a forum

---

[20]    In fact, any such attempt would likely be unconstitutional.  The Minnesota statute does not limit its application to only Minnesota manufacturers and Minnesota dealers.  As a matter of legislative jurisdiction, there is a valid question of whether the Minnesota State legislature may permissibly enact a statute that purports to govern the rights of entities such as Jungheinrich USA that have no presence in the State.  Richman and Reynolds, Understanding Conflict of Laws § 94 (3rd ed. 2002).  And in any event, a state court may not constitutionally engage in "forum-closing" by purporting to limit cases premised on the state's law to only that state's courts.  Id. § 102 (discussing Crider v. Zurich Ins. Co., 380 U.S. 39 (1965)).

[21]    This Court notes, however, that some courts have ruled that by entering into a contract that includes a forum-selection clause, the plaintiff has made its choice such that a court entertaining a transfer motion should not accord any weight to the "plaintiff's choice-of-forum," a factor to which, of course, courts otherwise often defer in the absence of any choice-of-forum clause.  E.g. Jumara v. State Farm Ins. Co., 55 F.3d 873, 880 (3d

continue...

selection clause because it conflicts with a statutory venue provision ignores the strong countervailing public policy in favor of holding parties to their agreements, which a court in similar circumstances has described as *the* 'dominant policy in contract cases . . . the better to promote commerce.'" Servewell Plumbing, LLC v. Fed. Ins. Co., 439 F.3d 786, 791 (8th Cir. 2006) (emphasis in original).

Apart from the forum-selection clause and the policy of any state regarding such agreements, the other Section 1404(a) factors are generally grouped into one of three categories:  "(1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." Terra Int'l v. Mississippi Chemical Corp., 119 F.3d 688, 691 (8th Cir. 1997).  But these categories of factors are not exclusive and transfer motions are decided on a "case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." Id.  But again, "[a]lthough there is no exhaustive list of specific facts to consider," a "valid and applicable forum selection clause in a contract is 'a significant factor that figures centrally in the district court's calculus.'" Id. (quoting Stewart, 487 U.S. at 29).[22]

_____

[21]...continue
Cir. 1995); Incompass It, Inc. v. XO Communications Services, Inc., 2011 WL 2037603, *3 (D. Minn. May 24, 2011).  See generally 15 Wright and Miller, Federal Practice and Procedure § 3854.1, at 313 & n.4 (3d ed. 2007).

[22]     In Terra, the Eighth Circuit noted that the factors considered by the district court in that case "parallel the factors that courts typically analyze under Section 1404(a)." Id. at 696.  With respect to "convenience," the district court considered:

(1) the convenience of the parties, (2) the convenience of the witnesses–including the willingness of witnesses to appear, the ability to

continue...

25

Here, the parties focus on only a few factors.  MSC relies substantially on two untenable arguments.  First, it argues that the forum-selection clauses are unenforceable under the state dealership statutes.  (Doc. No. 57, at 21; Doc. No. 60, at 19-23.)  But as discussed above, when a federal court exercises its diversity jurisdiction, Section 1404(a) not only governs the resolution of proper venue, but also subordinates such state policies to the overall analysis, which is principally guided by the fact that the plaintiff agreed to a different forum.  Second, it argues that judicial economy mandates retention of the entire dispute here.  But as also discussed above, some fragmentation of the overall action is unavoidable because MSC is obligated to arbitrate Count VIII.

In addition, MSC argues convenience.  (Doc. No. 57, at 21-22.)  MSC relies on Nelson v. Master Lease Corp., 759 F. Supp. 1397 (D. Minn. 1991), for the proposition that a court may not transfer an action to another venue where the net result is merely to

---

[22]...continue
subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and documents, (4) the location where the conduct complained of occurred, and (5) the applicability of each forum state's substantive law.

Id.  With respect to "the interests of justice," the court considered:

(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law.

Id.

shift the inconvenience from one party to another.  But, of course, it will always be

somewhat more inconvenient for one party to litigate in a particular forum that all parties

do not call home.  And "mere 'inconvenience to a party is an insufficient basis to defeat

an otherwise enforceable forum selection clause.'"  <u>Servewell Plumbing, LLC</u>, 439 F.3d

at 790.

MSC further contends that several of its claims will remain here even if this Court

grants each of the pending transfer motions.  (Doc. No. 54, at 2; Doc. No. 57, at 23.)  But

Counts III, IV, V and VII could be transferred too, each to the respective forum in which

MSC agreed to resolve its disputes with a particular Defendant.  <u>See infra</u> Section

II.B.2(b).

Finally, MSC contends that the "parties are inextricably interrelated" and its claims

"spring from a single set of facts in which each is a player."  (Doc. No. 57, at 23.)

Granted, each of its claims stems from the same overall nucleus of operative facts.  But it

is far from clear that the entire dispute must be decided by the same court.  (And it is clear

that at least Count VIII is subject to arbitration.)  First, seven of the nine claims are

directed at only one Defendant.  Second, the resolution of individual claims by separate

bodies would not necessarily result in inconsistency or other prejudice to MSC.

For example, the two main claims against Jungheinrich USA (Counts I and II) will

be heard by the same court in Virginia.  Count II is also subject to the same forum-

selection clause because while it alleges violations of state statutes, the violations are

premised on the allegation that Jungheinrich USA terminated, cancelled or substantially

changed the "the competitive circumstances of the Jungheinrich Distributor Agreement."

(Doc. No. 1, ¶ 90.)  The forum-selection clause in the Distributor Agreement provides

that "[t]he exclusive place of jurisdiction for *any* legal disputes *arising, directly or*

*indirectly*, from this Agreement shall be the place of business of Jungheinrich [USA]."

(Doc. No. 1-2, § 12(2) (emphases added).)[23]  Indeed, MSC's counsel argued, at the

hearing on this matter, that those counts may not be separated because the claims alleging

statutory violations, Count II (and with respect to MCFA, Count VII) grow out of the

contract, such that the breach of contract gives rise to the statutory claims.  Although

MSC plainly seeks to keep those claims not only together, but also venued here, the Court

agrees that claims for statutory violations (Counts II and VII) should be heard by the

same courts that hear the breach of contract claims (Counts I and VI), but concludes that

they should be heard where the parties agreed to have them venued.

Likewise, the main (non-contingent) claims against MCFA (Counts VI and VII),

would be heard by the same court in Ohio.  Count VI plainly alleges breach of the

MCFA-CAT Dealer Agreement and thus is subject to that agreement's forum-selection

_____

[23]    Although, as will be discussed, this Court need not rule on where the
"alternative" (contingent) claim against Jungheinrich USA (part of Count III) should be
venued, it appears that it too would be heard in the same forum because the claim against
Jungheinrich USA is also for breach of the Distributor Agreement.  Count III, directed at
both Jungheinrich USA and MCFA, is premised on the assumption that Jungheinrich
USA assigned the Distributor Agreement, in violation of its requirements and limitations
on such assignments, to MCFA, which then, as assignee, violated that agreement.
Accordingly, the portion of Count III directed at Jungheinrich USA asserts a contingent
claim that parallels Count I, and thus both should be subject to the forum-selection clause
of the Distributor Agreement.

clause.  As with the parallel claims against Jungheinrich USA (Counts I and II), Count

VII would also be subject to the same agreement that governs the venue with respect to

Count VI because while it alleges violations of state statutes, the violations are premised

on the allegation that MCFA terminated, cancelled or substantially changed the "the

competitive circumstances of the MCFA-CAT Dealership Agreement."  (Doc. No. 1, ¶

163.)  The forum-selection clause in that agreement provides that "[t]he venue of any

action or proceedings *pertaining* to this agreement shall be the Courts (U.S. or Ohio) of

Cuyahoga County, Ohio."  (Doc. No. 42, Ex. 1, § 29 (emphases added).)[24]

     The portion of Count IX directed at MCFA and alleging tortious interference with

MSC's contract with Jungheinrich USA is admittedly a tort claim and not one for breach

of MCFA's contract with MSC, the CAT-Dealership Agreement.  But the forum-selection

clause–extending to actions "pertaining" to the contract–is thus not confined to actions for

breach of the agreement.  And in the unusual circumstances faced here, the claim that

MCFA caused Jungheinrich USA to breach its agreement with MSC sufficiently

"pertains" to MCFA's contractual relationship with MSC to warrant the Ohio federal

court to also hear the tort claim.

     The main claim against Jungheinrich AG (Count VIII) will be arbitrated in

---

[24]    Granted, MCFA asserts that it "is not contending . . . that the contractual
forum selection clause has any application to Minnesota Supply's statutory claims in
Count VII."  (Doc. No. 70, at 5 n.2.)  But in these circumstances, this Court may raise the
issue of transfer on its own, particularly insofar as the issue of venue plainly has been
asserted with respect to a large portion of this action.  See 14D Wright and Miller, Federal
Practice and Procedure § 3826, at 551-52 (3d ed. 2007) (noting distinction between
transfers and dismissals).

London, but that dispute concerns the separate software agreement solely between MSC and Jungheinrich AG, a dispute that is not governed by the Minnesota (or Wisconsin) dealership statutes, and one that is arguably more severable from the overall dispute than any of the other claims.  And as noted above, the portion of Count IX directed at Jungheinrich AG and alleging tortious interference with MSC's contract with Jungheinrich USA is best heard by the same court that decides whether Jungheinrich USA breached that agreement.

The Court certainly appreciates MSC's apparent dilemma of pursuing claims against three Defendants, each of which seeks to enforce a choice-of-forum provision specifying a different venue.  Cf. Taylor Investment Corp. v. Weil, 169 F. Supp. 2d 1046, 1060-61 (D. Minn. 2001) (declining to enforce forum-selection clause, to which it "normally gives deference," where enforcement would result in possibility of conflicting judgments); Pressdough of Bismark, LLC v. A & W Restaurants, Inc., 587 F. Supp. 2d 1079, 1086-89 (D.N.D. 2008) (declining to enforce forum-selection clause that would result in forcing "the parties to litigate, in multiple forums, the exact same claims raised in this action").  Nevertheless, some fragmentation of the action will result due to the requirement that this Court enforce the arbitration agreement between MSC and Jungheinrich AG.  And neither Taylor Investment Corporation nor Pressdough of Bismark, LLC involved any claims subject to arbitration so as to preclude the option of a single forum.  Moreover, while the Court is cognizant of MSC's concern regarding the possibility of inconsistent rulings from the various courts and arbitral tribunal, judicial

30

tools such as stays pending another court's resolution of related issues, and doctrines such as issue preclusion, exist to preclude inconsistent results.

Finally, this Court notes that, in light of the mandatory framework provided in Stewart Organization, it need not address (1) Jungheinrich's arguments that (a) the action should simply be dismissed for improper venue under either Rule 12(b)(3) or Section 1406(a), or that (b) Count II should be dismissed for failure to state a claim under Rule 12(b)(6); or (2) MCFA's argument that Count IX should be dismissed under Rule 12(b)(6) for failure to state a claim.  Rather, based on the Supreme Court's decision in Stewart Organization, the entire dispute as to the proper forum for this diversity action is governed by Section 1404(a).  Furthermore, for the same reasons, this Court need not address the parties' arguments regarding the Supreme Court's admiralty decisions in The Bremen and Carnival Cruise Lines.

### (b)     The "Contingent" Counts

This leaves only Counts IV and V, and the remaining portion of Count III, each of which is directed solely at MCFA.  MSC's Complaint alleges nine counts, three of which, however, Counts III, IV and V, are "[p]leaded in the [a]lternative."  (Doc. No. 1, at 20-31.)  In effect, these claims are "contingent" because their viability turns on the resolution in a particular fashion of certain issues on the merits.

As noted above, MSC contends that the various forum-selection provisions at issue here do not extend to all of the particular claims MSC asserts, including, primarily, these

31

contingent claims.[25]  At the outset, the Court notes that it is not entirely clear how such claims–each of which is contingent on the resolution on the merits of particular issues–should be considered for purposes of the present motions to dismiss for improper venue.  As contingent claims, they are not presently "in play" and might never be.

For example, with respect to Count III–which is contingent on the decision on the merits that Jungheinrich USA assigned its Distributorship Agreement with MSC to MCFA–MCFA states that it "is not an assignee of the Jungheinrich Agreement or of any rights or obligations under" that agreement.  (Doc. No. 51, ¶ 18.)  And counsel for MCFA expressly represented to the Court at the hearing on this matter that as a matter of law MCFA was not assigned the agreement.[26]  Thus, because the requisite contingent trigger will not be met, the Court need not decide in which forum Count III should be litigated.

And with respect to the other contingent claims, the Court is hesitant to change its decision on where the "primary" (i.e., non-contingent) claims should be venued based on

---

[25]     As noted above, although Defendants have not directly moved to dismiss every claim for lack of proper venue, this Court may raise the issue of the proper venue *sua sponte*.  See supra note 24.

[26]     On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the facts as alleged in a plaintiff's complaint would have to be taken as true.  But here, the proper procedural vehicle for challenging venue is a Rule 12(b)(3) motion, under which the court is not confined to the allegations of the Complaint.  Webb Candy, Inc. v. Walmart Stores, Inc., 2010 WL 2301461, *4 (D. Minn. June 7, 2010); Sucampo, 471 F.3d at 559-50.  Thus, although a Rule 12(b)(3) motion is generally governed by the same standards as a Rule 12(b)(6) motion, a court need not defer to a plaintiff's venue allegations where they are "contradicted by the defendants's affidavits."  5B Wright and Miller, Federal Practice and Procedure § 1352, at 324 (3d ed. 2004).  In any event, MSC's counsel conceded at oral argument that Count III was pled in the "alternative" because he did not know whether the agreement had, in fact, been assigned.

the inclusion of the contingent claims in the Complaint because it is entirely possible that the contingent claims will never be triggered.

Count IV, directed solely against MCFA, rests on the assumption that the Distributor Agreement is found to have "somehow ceased to be in force or effect." (Doc. No. 1, at 24.)  That issue is a question going to the merits that may not be addressed before the proper court determines that Jungheinrich USA's purported termination of the Distributor Agreement was valid and effective.  Nevertheless, Count IV alleges breach of a contingent implied-in-fact contract (replacing the Distributor Agreement with Jungheinrich USA) that arguably might not–at least according to MSC–contain a forum-selection clause.  But the absence of such a contractual term does not mean that Count IV must remain in this forum even if the other claims are transferred to other courts or arbitral bodies.  It would make no sense for this Court to enforce the choice-of-forum provision of the MCFA-CAT Dealer Agreement and transfer Count VI (and Count VII) to Ohio, and yet retain Count IV, as dormant and contingent, only to have the Ohio federal court later conclude that Jungheinrich USA properly terminated that agreement so as to trigger the allegations of Count IV.  Moreover, the forum-selection clause of the MCFA-CAT Dealer Agreement provides that all actions or proceedings "*pertaining to*" that agreement shall be venued in Ohio.  The breadth of that provision plausibly extends to the claim that that agreement had been superseded by the implied-in-fact contract MSC alleges in Count IV might exist.

Count V, also directed only against MCFA and, like Count II, alleging violations

33

of state statutes, is contingent on the conclusion either that Jungheinrich USA properly

assigned the Distributor Agreement to MCFA or that there exists a valid implied-in-fact

contract between MSC and MCFA (as alleged in the contingent Count IV).  Again, these

issues on the merits may not be resolved at this time.  Moreover, the factual basis for the

first triggering contingency–the alleged assignment by USA of the Distributor Agreement

to MCFA–already has been repudiated.  And the second triggering contingency–that the

parties entered into an implied-in-fact contract as alleged in Count IV–entails two

separate decisions on the merits that have yet to be made:  not only that the parties

entered into such a contract, but whether the terms included a forum-selection provision.

  If this Court determines that Counts VI and VII belong in a different forum, there

is nothing to be gained, and likely something to be lost, in this Court retaining Count V

here.  If it is found that MCFA and MSC entered into an implied-in-fact contract as

alleged in contingent Count IV, MSC's claims of statutory violations would be venued

best in the forum that would be deciding Count IV.  But again, this Court need not decide

where the contingent claims should be heard for purposes of ruling on the present motions

to transfer.

## III. CONCLUSION

  This Court possesses no discretion to not enforce MSC's agreement to arbitrate its

disputes with Jungheinrich AG.  Thus, MSC's argument that this Court should resolve the

entire dispute is untenable, eroding MSC's opposition to the enforcement of the forum-

selection clauses it agreed to with Jungheinrich USA and MCFA.  Accordingly, the Court

34

will direct the Clerk of Court to transfer this action, as divided per the respective

Defendants, to the London arbitration body, and to the appropriate federal district courts

in Virginia and Ohio.

Because the Court has concluded that this action should not proceed here,

Plaintiff's motion for a preliminary injunction will be denied without prejudice to seeking

such relief in the appropriate venue. Plaintiff's motion for an expedited scheduling order

seeking an early evidentiary hearing on that request for injunctive relief, as well as an

early hearing on its request for declaratory judgment, is denied as moot.

## IV.    ORDER

Based on the foregoing, and all the files, records and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1.      Defendant Mitsubishi Caterpillar Forklift America Inc.'s motion to dismiss

[Doc. No. 11] is **GRANTED IN PART** (insofar as it seeks transfer) and **DENIED IN**

**PART** (insofar as it seeks dismissal for improper venue or for failure to state a claim);

2.      Defendant Jungheinrich Lift Truck Corporation's motion to dismiss or

transfer [Doc. No. 29] is **GRANTED IN PART** (insofar as it seeks transfer) and

**DENIED IN PART** (insofar as it seeks dismissal for improper venue or for failure to

state a claim);

3.      Defendant Jungheinrich AG's motion to dismiss or to stay and compel

arbitration [Doc. No. 40] is **GRANTED IN PART** (insofar as it seeks arbitration) and

**DENIED IN PART** (insofar as it seeks dismissal);

4.      Plaintiff's motion for a preliminary injunction [Doc. No. 16] is **DENIED**

**WITHOUT PREJUDICE**;

5.      Plaintiff's motion for an expedited scheduling order [Doc. No. 19] is

**DENIED AS MOOT**;

6.      The Clerk of Court shall **TRANSFER** the relevant portions of this action to

the appropriate federal courts as follows:

        (A)     Counts I, II and the portion of Count III directed at Jungheinrich

              USA and the portion of Count IX directed at Jungheinrich AG to the

              Eastern District of Virginia; and

        (B)     Counts IV, V, VI and VII, and the portions of Counts III and IX

              directed at MCFA to the Northern District of Ohio; and

7.      Plaintiff and Jungheinrich AG shall submit Count VIII to arbitration as

provided in the Software Contract; and

8.      This action is **DISMISSED WITHOUT PREJUDICE**.


Dated:   September 30, 2011                        __s/ Susan Richard Nelson__
                                                   SUSAN RICHARD NELSON
                                                   United States District Judge